102 So.2d 143 (1958)
TOWN OF MIAMI SPRINGS, a municipal corporation of the State of Florida, Appellant,
v.
Franklyn LAWRENCE and Muriel Lawrence, his wife, Appellees.
Supreme Court of Florida.
March 28, 1958.
Rehearing Denied May 7, 1958.
*144 Anderson & Nadeau, Miami, for appellant.
Estil H. Lanham and Van Buren Vickery, Miami, for appellees.
ROBERTS, Justice.
Plaintiffs-appellees sued the appellant Town of Miami Springs and Eastern Air Lines, Inc., for damages caused by the overflow onto and impounding of surface waters on plaintiffs' land, allegedly due to independent acts of the defendants which, operating concurrently, caused the injuries complained of. The substance of the complaint is related in Lawrence v. Eastern Air Lines, Inc., Fla. 1955, 81 So.2d 632, 634, in which this court held that the complaint stated a cause of action under the rule of Brumley v. Dorner, 78 Fla. 495, 83 So. 912, that "No person has the right to gather surface waters that would naturally flow in one direction by drainage, ditches, dams, or otherwise, and divert them from their natural course and cast them upon the lands of the lower owner to his injury," and reversed an order of the trial court dismissing the complaint.
After the going down of the mandate in Lawrence v. Eastern Air Lines, Inc., supra, the appellant Town filed its answer, alleging among others that the plaintiffs' cause of action was barred by the one-year statute of limitations applicable to suits against cities and villages, § 95.24, Fla. Stat. 1957, F.S.A., and by the failure of the plaintiffs to file a timely notice of claim as required by § 42 of the Town's Charter. At the close of plaintiffs' case and again at the close of all the evidence the Town moved for a directed verdict in its favor on these issues. Its motions were denied. Motion for judgment n.o.v. on the same grounds was filed after verdict and again denied. These rulings, among others, are here assigned as error in an appeal by the Town from a verdict and judgment awarding plaintiffs damages in the amount of $4,000 against the Town, the jury having found the defendant Eastern Air Lines, Inc., not guilty.
Section 95.24, Fla. Stat. 1957, F.S.A., provides that "No action shall be brought against any city or village for any negligent or wrongful injury or damage to person or property unless brought within twelve months from the time of the injury or damages." Section 42 of the Town's Charter provides that "No suit shall be maintained against the Town for damages arising out of any tort, unless written notice of such claim was, within 60 days after the day of receiving the alleged injury, given to the Town Clerk with specifications as to the time and place of the injury."
The plaintiffs' evidence showed that the Town raised the elevation of the street adjoining plaintiffs' property in the summer of 1952; that in January of 1953 the plaintiff husband first noticed in his home some of the "conditions" allegedly resulting from the impounding of the water on his property; that he complained verbally to the Town Clerk about the situation in the summer of 1953; and that he filed a written notice of claim with the Town Clerk in June of 1954. The instant suit was filed in December of 1954.
*145 The Town contends on this appeal that plaintiffs' own testimony shows that their suit was barred under the one-year statute of limitations and the notice-of-claim charter provision, quoted above. The plaintiffs counter with the argument that the suit was not for a single wrong but for a "series of separate wrongs, injuries and damages [occurring] many times each year during periods of rain."
No contention is here made by the Town that the cause of action accrued and the statute of limitations started running at the time the Town raised the elevation of the street. And we agree that the better rule in this class of cases (suits for damages from overflow of land caused by artificial construction or obstruction) is that the statute does not begin to run until actual harm is inflicted to the plaintiff's land, regardless of the installation date of the construction or obstruction causing the overflow. See 56 Am.Jur., Waters, § 444; Baker v. Fort Worth, 1948, 146 Tex. 600, 210 S.W.2d 564, 5 A.L.R.2d 297; Henderson v. Talbott, 1954, 175 Kan. 615, 266 P.2d 273; annotation in 5 A.L.R.2d pp. 302 et seq.
It is true that in Cristiani v. Sarasota, Fla. 1953, 65 So.2d 878, 879, a case involving injury to the person, this court interpreted § 95.24, supra, as requiring a suit for "damage to property" to be filed within one year of the time of the "accident or misfortune" that caused the damage. In the instant case, however, there was no direct invasion of the plaintiffs' property by the raising of the elevation of the street; the "accident or misfortune" resulting in damage to plaintiffs' property was the overflow onto and impounding of surface waters on plaintiffs' property, and until that occurred the plaintiffs could not have stated a cause of action for "damage to property". Cf. City of Amarillo v. Gray, Tex.Civ.App. 1957, 304 S.W.2d 742; City of Miami v. Brooks, Fla. 1954, 70 So.2d 306.
Assuming, then (as the Town has done in its argument here) that a cause of action first accrued in January of 1953, the real issue is whether the limitations period started running on that date for a single cause of action comprising the whole damage  past, present and prospective  recoverable by plaintiffs, so that their suit was barred, at least, by January of 1954 under the one-year limitation period prescribed by § 95.24, supra, if not sooner under the notice-of-claim  Charter provision; or whether each successive flooding after January of 1953 gave rise to a new cause of action against which the statute of limitations started to run from the time of each successive injury. The conflicts and the confusion on this question among courts of other jurisdictions  and even among the courts of a single jurisdiction  are summarized by the annotator in 5 A.L.R.2d beginning at page 309. No general rule for the decision of this question has been heretofore formulated by this court.
In imposing liability on an adjoining landowner for damage caused by overflow resulting from an artificial construction or obstruction, the courts of some jurisdictions have proceeded on the theory of a nuisance, see Nimmons v. City of LaGrange, 1956, 94 Ga. App. 511, 95 S.E.2d 314; Consolidated Chemical Industries, Inc. v. White, Ark. 1957, 297 S.W.2d 101; others have proceeded on the theory of liability for tortious damage to or trespass on property, see Henderson v. Talbott, 1954, 175 Kan. 615, 266 P.2d 273; Naylor v. Eagle, Ark. 1957, 303 S.W.2d 239; Texas & N.O.R. Co. v. Barnhouse, Tex.Civ. App. 1956, 293 S.W.2d 261; City of Ashland v. Kittle, Ky. 1957, 305 S.W.2d 768; Woodland v. Lyon, 1956, 78 Idaho 79, 298 P.2d 380; Elk City v. Rice, Okl. 1955, 286 P.2d 275. It was indicated in Brumley v. Dorner, supra, 83 So. 912, that the gist of such a cause of action was trespass.
But whatever the theory of liability, the decisions of the courts of other states on this question are accurately summarized *146 (although in somewhat broad and general terms) in the following statement in 56 Am.Jur., Waters, § 443, p. 858-859:
"The determination of the question whether the flooding of land gives rise to a single right or successive rights of action depends ordinarily upon whether the injury or the causative condition is permanent or temporary. The rule prevailing in most jurisdictions is that if the injury is permanent, or if the causative structure or condition is of such a character that injury will inevitably result and the amount of the damage can be determined or estimated, a single action may and should be brought for the entire damages, both past and prospective. But if the overflow is merely temporary, occasional or recurrent, causing no permanent injury to the land, or if the situation involves other elements of uncertainty, such as the possibility or likelihood of the alteration or abatement of the causative conditions, or uncertainty in regard to the future use or improvement of the land, so as to prevent a reasonably accurate estimate of future damages, it is generally held that each repetition of the overflow gives rise to a new cause of action for which successive actions may be brought."
Here the cause of action stated and proved by plaintiffs against the Town was that the Town raised the level of the street and failed to provide for drainage, thereby gathering up the waters that collected on the paved surface of the Eastern Air Lines parking area after a rainfall and diverting them over onto and impounding them on plaintiffs' property. It was alleged that these acts "constitute a continuing wrong against the plaintiffs." The damages alleged and proved were consistent with the theory of a suit for temporary damages for past injuries, see McHenry v. Parkersburg, 66 W. Va. 533, 66 S.E. 750; Texas & N.O.R. Co. v. Barnhouse, Tex.Civ.App. 1956, 293 S.W.2d 261; Nimmons v. City of LaGrange, 1956, 94 Ga. App. 511, 95 S.E.2d 314, rather than a suit for permanent damages  past, present and prospective  based on the difference in the value of the property with and without the flowage. See 56 Am.Jur., Waters, § 441, p. 856; Texas & N.O.R. Co. v. Barnhouse, supra, 293 S.W.2d 261. It was shown that during the summer of 1954 the plaintiff husband built a dike on two sides of the property and, sometime thereafter, the Town constructed two dry wells in the intersection adjacent to plaintiffs' property; and that the plaintiffs' property is no longer subjected to the overflow condition allegedly causing the damages previously incurred and sought to be recovered in the instant suit. The plaintiff husband testified that the dike built by him stopped the overflow; one of the Town's witnesses said that the dry wells had been so recently constructed that it was impossible to tell whether they would carry off the surface water in the area after a rainfall.
It affirmatively appears, then, that the overflow condition was abatable and has, in fact, been abated  although its abatement could be attributed to plaintiffs' efforts alone. It does not appear that the permanent value of the plaintiffs' property was affected by the recurrent overflow, now abated. It should also be remembered that the burden is on the pleader to prove the defense of the statute of limitations. In all the circumstances here, we think that the evidence failed to show, as a matter of law, that the flooding of plaintiffs' land had the characteristics of permanency sufficient to require the bringing of a single action for the entire damages, both past and prospective. This being so, the trial judge did not err in declining to direct a verdict in favor of the defendant on the ground that the suit was barred by § 95.24, supra, since damages would be recoverable for each repetition of the overflow occurring within one year of the time that suit was filed, under the general rule stated above. By the same token, the suit was not completely barred by plaintiffs' failure to give *147 the notice of claim required by § 42 of the Town's Charter within 60 days after the first damage to their property, see Wright v. City of Richmond, 146 Va. 835, 132 S.E. 707; Richmond v. James, 1938, 170 Va. 553, 197 S.E. 416, 116 A.L.R. 967; Nimmons v. City of LaGrange, 1956, 94 Ga. App. 511, 95 S.E.2d 314; City of Clanton v. Johnson, 1944, 245 Ala. 470, 17 So.2d 669; Phillips v. City of Pasadena, 1945, 27 Cal.2d 104, 162 P.2d 625; cases collected in the annotation in 116 A.L.R. pp. 975 et seq. The question of the period of time for which the damages recoverable by plaintiffs could properly have been limited under § 42 of the Town Charter is not presented here.
The other questions here argued by the Town have been carefully considered and no reversible error has been made to appear.
Accordingly, the judgment appealed from should be and it is hereby
Affirmed.
TERRELL, C.J., and THORNAL and O'CONNELL, JJ., concur.
DREW, J., agrees to the conclusion.