PLEUS, J.
Sadie Baker, plaintiff below, appeals from adverse summary final judgments on her claims that neighboring landowners (defendants) were responsible for flooding on her property. Because we conclude issues of fact exist as to the abatability of the flooding during the four years prior to filing suit, we reverse and remand.
Baker owns a house in West Melbourne. The defendants are adjacent homeowners. Baker sued the defendants in March 2003, claiming the adjacent landowners’ homes were constructed in such a way as to cause serious flooding on her property. Baker claimed she first noticed “pooling” on her land in 1989 and despite replacement of a culvert and the use of fill dirt, the problem periodically continued, resulting in damage to her home and personal property, particularly during major rain events, such as Hurricane Erin in 1995. West Melbourne was also joined in the lawsuit.
The defendants moved for summary judgment asserting that Baker’s nuisance and trespass claims were barred by the four-year statute of limitations. The trial court agreed and entered summary final judgments for the defendants.
Baker argues that a genuine issue of material fact exists as to whether the injury to her property is permanent or whether it is re-occurring and temporary so that each successive flooding would give rise to new causes of action. She further maintains that the continuing torts doctrine provides an exception to the four-year statute of limitations for nuisance and trespass.
Subsections 95.11(3)(g) and 95.11(3)(p), Florida Statutes, provide that actions for trespass on real property and nuisance must be brought within four years. The trial court ruled that the undisputed evidence established that Baker failed to bring her claims within this four-year limitations period.
Baker contends that summary judgment was improvidently entered because genuine issues of material fact exist as to whether the flooding on her property is permanent in nature or rather what she labels “reoccurring, abatable> periodical and temporary” (emphasis added). Baker argues she presented evidence that over time, with each flood, new damage occurs to the property. She conceded below that she is not seeking to recover damages occurring prior to March, 1999 — four years prior to the filing of her initial complaint in March, 2003.
The defendants counter that at least since Hurricane Erin struck Brevard County in 1995, Baker “had irrefutable confirmation that the flooding was severe” and that development of the defendants’ property had caused or contributed to the flooding and ensuing damage to her property. It is the defendants’ position, accepted by the trial court, that Baker’s failure to bring her nuisance and trespass actions against the defendants within four years of the summer of 1995 renders such causes of action time-barred.
Baker averred in her amended affidavit that “flooding which damaged the garage and one bedroom cottage addition to the *443 house, as well as the contents of both, began in 1995 and has continued despite our continuous digging of drainage ditches .... ” However, the flooding is not constant and during drier weather periods, no flooding occurs.
As a general proposition, statute of limitations periods begin to run with the discovery by the plaintiff of an act constituting an invasion of the plaintiffs legal rights. Wagner, Nugent, Johnson, etc. v. Flanagan, 629 So.2d 113 (Fla.1993). See also Peat, Marwick, Mitchell & Co. v. Lane, 565 So.2d 1323 (Fla.1990).
In the context of a physical invasion of real property such as a flooding claim, when the statute of limitations begins to run on such claim, whether denominated as a nuisance or trespass action, turns upon whether the action is construable as a suit for permanent or temporary damages.[1] Kulpinski v. City of Tarpon Springs, 473 So.2d 813 (Fla. 2d DCA 1985). See also Petroleum Prods. Corp. v. Clark, 248 So.2d 196 (Fla. 4th DCA 1971) (oil stored in reservoir percolating underground onto neighboring property). In Town of Miami Springs v. Lawrence, 102 So.2d 143, 146 (Fla.1958), the Florida Supreme Court quoted with approval the following passage from 56 Am.Jur. Waters, § 443, at 858-59:
The rule prevailing in most jurisdictions is that if the injury is permanent, or if the causative structure or condition is of such a character that injury will inevitably result and the amount of the damages can be determined or estimated, a single action may and should be brought for the entire damages, both past and prospective. But if the overflow is merely temporary, occasional or recurrent, causing no permanent injury to the land, or if the situation involves other elements of uncertainty, such as the possibility or likelihood of the alteration or abatement of the causative conditions, or uncertainty in regard to the future use or improvement of the land, so as to prevent a reasonably accurate estimate of future damages, it is generally held that each repetition of the overflow gives rise to a new cause of action for which successive actions may be brought.
See also, 78 Am.Jur.2d Waters, § 388, at 687-88 (2002).
In Town of Miami Springs, the court was confronted with a one-year statute of limitations for actions against a municipality for damage to real property. The plaintiffs sued the town for damages caused by the “overflow onto and impounding of surface waters on plaintiffs’ land.” The plaintiffs showed at trial that the town had raised the elevation of the street adjoining their property in the summer of 1952, and that in January 1953, one of the plaintiffs first noticed in his home some of the conditions allegedly resulting from the impounding of water on his property. While a complaint was made to the town, suit was not filed until June of 1954. The town urged that the claim was time-barred, while the plaintiffs countered that their suit was not for a single wrong, but for a series of separate wrongs occurring many times each year during periods of rain. In siding with the plaintiffs, the Florida Supreme Court explained:
Here the cause of action stated and proved by plaintiffs against the Town was that the Town raised the level of the street and failed to provide for drainage, *444 thereby gathering up the waters that collected on the paved surface after a rainfall and diverting them over onto and impounding them on plaintiffs’ property. It was alleged that these acts “constitute a continuing wrong against the plaintiffs.” The damages alleged and proved were consistent with the theory of a suit for temporary damages for past injuries, see McHenry v. Parkersburg, 66 W.Va. 533, 66 S.E. 750; Texas & N.O.R. Co. v. Barnhouse, Tex.Civ. App.1956, 293 S.W.2d 261; Nimmons v. City of LaGrange, 1956, 94 Ga.App. 511, 95 S.E.2d 314, rather than a suit for permanent damages-past, present and prospective-based on the difference in the value of the property with and without the flowage. See 56 AmJur., Waters, s 441, p. 856; Texas & N.O.R. Co. v. Barnhouse, supra, 293 S.W.2d 261. It was shown that during the summer of 1954 the plaintiff husband built a dike on two sides of the property and, sometime thereafter, the Town constructed two dry wells in the intersection adjacent to plaintiffs’ property; and that the plaintiffs’ property is no longer subjected to overflow condition allegedly causing the damages previously incurred and sought to be recovered in the instant suit. The plaintiff husband testified that the dike built by him stopped the overflow; one of the Town’s witnesses said that the dry wells had been so recently constructed that it was impossible to tell whether they would carry off the surface water in the area after a rainfall.
It affirmatively appears, then, that the overflow condition was abatable and has, in fact, been abated — although its abatement could be attributed to plaintiffs efforts alone. It does not appear that the permanent value of the plaintiffs’ property was affected by the recurrent overflow, now abated. It should also be remembered that the burden is on the pleader to prove the defense of the statute of limitations. In all the circumstances here, we think that the evidence failed to show, as a matter of law, that the flooding of the plaintiffs’ land had the characteristics of permanency sufficient to require the bringing of a single action for the entire damages, both past and prospective. This being so, the trial judge did not err in declining to direct a verdict in favor of the defendant on the ground that the suit was barred by s. 95.24, supra, since damages would be recoverable for each repetition of the overflow occurring within one year of the time that suit was filed, under the general rule stated above.
102 So.2d at 146 (emphasis added).
In Kulpinski, the appellate court reversed the dismissal of a flooding claim on statute of limitations grounds. The plaintiff had alleged that she purchased a home from the defendant-builder in March 1976, and that beginning in June of that year, her property flooded every time it rained, preventing her from using large portions of her property for extended periods of time each year. The plaintiff alleged the flooding constituted a continuous invasion causing recurrent damages during periods of rain. She further alleged the flooding was abatable.
In reversing, the appellate court noted that the plaintiff “has alleged a recurrent flooding which is abatable,” and thus her complaint was consistent with the theory of a suit for temporary damages. 473 So.2d at 814. The court held the plaintiff was entitled to maintain an action for damages caused by each repetition of the flooding occurring within the limitations period immediately preceding the filing of the complaint. Id. The court noted that the appeal was being considered on a motion to dismiss and that the city “may ultimately succeed in proving that the damage suffered was permanent and that *445 the suit is barred by the statute of limitations.” Id.
Unlike Kulpinski, the present case was decided in a summary judgment context, with the parties having the opportunity to present evidence as to the nature and extent of the invasion and resultant damages. The narrow question is whether the defendants have carried their burden of demonstrating that the undisputed evidence reflects that the flooding was permanent in nature as of 1995 so that the present action is time-barred. Under the operative case law, we answer this question in the negative.
In Carlton v. Germany Hammock Groves, 803 So.2d 852 (Fla. 4th DCA 2002), the Fourth District reversed a summary judgment which had ruled a flooding claim was barred by the statute of limitations. In that case, Carlton’s land was subject to flooding after a culvert on the defendant landowner’s property, which allowed for drainage of Carlton’s property, was crushed by the defendant in 1989. Suit was not brought until 1998, and Carlton sought to avoid the four-year statute of limitations by claiming the flooding of his land was a recurring injury that resulted in recurring damages during each wet season. He argued that under the continuing torts doctrine, each successive flooding since 1989 gave rise to new causes of action under nuisance and trespass theories, against which the statute of limitations began to run from the time of each successive injury. The defendant countered that the flooding was a permanent injury which occurred four years before suit was filed, thus barring the action.
The Fourth District framed the appellate issue as:
[wjhether the limitations period started running in 1989 when the culvert was crushed for a single cause of action comprising permanent damages (past, present and prospective) so that the cause of action was barred in 1993; or whether each successive flooding after 1989 gave rise to a new cause of action against which the statute of limitations started to run from the time of each successive injury so that Carlton can recover for the damages resulting from the flood-ings that occurred in the four years prior to filing suit.
803 So.2d at 854.
The court discussed Town of Miami Springs and ultimately concluded that the defendant had failed to establish that “there were no issues of material fact concerning whether a permanent injury occurred four years before suit was filed so as to bar the action.” Id. The court explained:
Carlton alleged sufficient facts with regards [sic] to the flooding and resulting damages occurring in the four years preceding the date suit was filed so as to urge application of the continuing torts doctrine and preclude summary judgment. See Pearson v. Ford Motor Co., 694 So.2d 61, 68-69 (Fla. 1st DCA 1997) (“Whether the continuing torts doctrine applies to the facts of a case is for a trier of fact to decide.”). As Carlton urges, he has alleged an injury similar to that in Lawrence. As in Lawrence, damage to the property was caused by intermittent flooding occurring during rainfall, and the flooding was abatable. In Lawrence, the flooding was abated by a dike. In this case, the flooding did not occur before the culvert was crushed; and thus, a culvert would abate the flooding. Because the injury is allegedly reoccurring and abatable, it is arguably not a permanent injury to the land, but rather a reoccurring injury to the land.
Id. at 856.
In Carlton, as in Town of Miami Springs and Kulpinski, the flooding was found to be abatable because flooding *446 could be avoided by maintenance of a culvert. While evidence was presented in this case that efforts to abate the flooding by digging drainage ditches and adding fill dirt were unsuccessful, Baker presented evidence that the flooding of her property was abatable upon the construction of a retaining wall and water diversion system along the southern portion of her property. A licensed professional engineer recounted in an affidavit as to the cost associated with remedying the flooding by constructing a retaining wall and water diversion system. A general contractor additionally averred in an affidavit filed below as to the cost of construction of a retaining wall. This evidence was sufficient to create an issue of fact as to abatability of the flooding during the four-year period prior to suit being filed sufficient to preclude entry of summary judgment.
REVERSED AND REMANDED.
MONACO, J., concurs.
LAWSON, J., concurs specially, with opinion.

. This analysis comports with general nuisance law which is to the effect that accrual of a nuisance claim depends on whether the nuisance alleged is "permanent” or "temporary.” A permanent nuisance claim accrues when injury first occurs or is discovered, while a temporary nuisance claim accrues anew upon each injury. See Schneider Nat'l Carriers, Inc. v. Bates, 147 S.W.3d 264 (Tx. Sup.Ct.2004).